**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**<u>DALLAS DIVISION</u>**

| | |
|---|---|
| **PAUL GAUMOND,** | * |
| | * |
| Plaintiff, | * |
| | *   **CIVIL ACTION NO.:** |
| VS. | * |
| | *   **3:21-CV-00624-E** |
| **THE CITY OF DALLAS, TEXAS,** | * |
| | * |
| Defendant. | * |

**<u>PLAINTIFF'S SECOND AMENDED COMPLAINT</u>**

**COMES NOW,** PAUL GAUMOND, Plaintiff, a police sergeant employed by the City of Dallas, Texas ("City"), in its Equipment Building Services/Dallas Security Division, and files his Second Amended Complaint against Defendant, for abridging his Fourteenth Amendment rights under the United States Constitution, for discrimination and retaliation under Title VII, wrongful termination, as well as related claims pursuant to the laws of the State of Texas. In support of his Amended Complaint, Plaintiff alleges and states as follows:

**<u>I. INTRODUCTORY STATEMENT – JURISDICTION AND VENUE</u>**

**Introductory Statement**

Plaintiff was employed by the City of Dallas, Texas, as a police officer, having been hired at the rank of sergeant. At the times relevant to this cause of action, until March 19, 2019, Plaintiff was continuously employed by the City of Dallas, Texas, as a police sergeant in its Equipment Building Services/Dallas Security Division since on or about August, 2013

.

**Jurisdiction**

1. This court has jurisdiction under 28 U.S.C. § 1331 and 1343.

**Venue**

2. Venue is properly laid in this court under terms of 28 U.S.C. § 1391(b), this being an action not founded on diversity of citizenship and the Northern District of Texas being the judicial district in which Defendant is located and in which events which are subject of this Civil Complaint occurred. This civil action is authorized by law to be commenced to redress the deprivation under color of law of rights guaranteed under the Fourteenth Amendment to the United States Constitution. Additionally, this Court has jurisdiction over Plaintiff's State law causes of action pursuant to 28 U.S.C. § 1367.

## II. PARTIES

3. At all times relevant to the events described herein, Plaintiff was employed by the City of Dallas, Texas, as a security sergeant.

4. The City of Dallas, Texas ("Defendant City") is a municipal corporation of the State of Texas and an employer of more than fifteen (15) individuals. Defendant City is ultimately responsible as a municipal corporation for all policies, procedures, practices, and operations of individual agencies of the government of the City of Dallas, and, in particular, the Police Department and the City's Equipment Building Services/Dallas Security Division. Defendant City is a City Manager form of government and is responsible, ultimately, for the operation of its municipal government pursuant to Article 1175, Texas Revised Statutes, and, pursuant to 42 U.S.C. §1983, bears responsibility for municipal policies, customs, practices, and procedures which violate the constitutional or statutory rights of Plaintiff. Defendant City has been served with process and made an appearance herein.

## III. FACTS

5.     On or about December 20, 2018, Plaintiff became aware that an internal investigation had been conducted against several male employees (Michael Doeringsfeld, Fred Gonzales, Jimmy Wigenton, and Kenneth Houston), including Plaintiff, for various conduct alleged to have been committed in part by Plaintiff in their line of work in the City's Department of Equipment and Building Services.  The allegations against Plaintiff were mainly along racial lines, while the other employees were accused of a variety of allegations (for example, Wigenton: Profanity, inappropriate comments, using probation as a tool, showing favoritism, bullying employees; Doeringsfeld: hostile work environment, displaying favoritism, using city equipment in his personal business).  Originally, in November of 2018, Defendant drafted a Notice of Suspension as to Plaintiff that would have removed Plaintiff from work for ten days (80 hours) as his punishment for the allegations against Plaintiff.  However, on December 17, 2018, before notifying Plaintiff of any of the allegations and giving Plaintiff a chance to address them, Defendant approved a "pre-termination" letter as to Plaintiff.  And, before giving Plaintiff the opportunity to address any allegations, Defendant took actions that wrongfully altered or limited Plaintiff's work status and notified Plaintiff that Defendant was going to hold a "pre-termination hearing" against Plaintiff.  On or about December 20, 2018, Defendant was placed on Administrative Leave.  On January 14, 2019, Plaintiff attended the "pre-termination" hearing; Plaintiff presented witnesses and evidence that refuted the allegations against him; some of Plaintiff's witnesses were people of color who stated that Plaintiff did not make any racially offensive comments, nor did they consider Plaintiff to be racist.  At the same hearing, Defendant did not produce any evidence, witnesses or testimony to support its allegations against Defendant.  Despite the overwhelming and uncontradicted testimony and evidence from the hearing, on or about March 19, 2019, Plaintiff was wrongfully discharged from his employment

with Defendant; the officer who signed Plaintiff's letters of suspension and presided over Plaintiff's "pre-termination" hearing was an African-American and Plaintiff is Caucasian. Plaintiff timely appealed his termination and requested a Civil Service hearing in accordance with Defendant's policies and procedures. Plaintiff also requested relevant documents for use in his appeal from Defendant via an Open Records request. Defendant sought a protective opinion from the Texas Attorney General's office, which concluded that Defendant had to produce everything Plaintiff requested aside from not disclosing certain personal information on individuals. To this date, Plaintiff has been denied all Civil Service Appeals of the latter discharge and, despite written request, Defendant has refused to produce meaningful and significant documents pursuant to Plaintiff's Open Records request. None of the other employees listed above were terminated for their offenses, the accusations of which were sustained by the City's Human Resources Department.

6.     Plaintiff is an employee within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") and belongs to classes protected under Title VII, namely Caucasian (White), Male, and over the age of 40.

7.     Defendant City is an employer within the meaning of Title VII and employs more than fifteen (15) individuals.

8.     As set forth above, Plaintiff's employment was wrongfully terminated on March 19, 2019. Although Plaintiff timely filed his appeal in accordance with Defendant's policies and procedures, Plaintiff was denied appeal hearings from March 19, 2019, through and including the date of the filing of this Amended Complaint.

9.     Plaintiff's right of appeal is set forth in Chapter 34, notably but not exclusively Sections 37-40, Dallas City Code, and Dallas City Charter Chapter XII, Section 4, as well as in the letter of termination of employment given by Defendant to Plaintiff.

**PLAINTIFF'S SECOND AMENDED COMPLAINT – Page 4 of 14**

10.     In accordance with Chapter 34, Dallas City Code; Chapter XVI, Dallas City Charter; and the Civil Service Code of Rules and Regulations and per the instructions of the letter of termination from Defendant, Plaintiff timely submitted an appeal of the latter discharge to the Secretary of the Civil Service Board and Director of the Civil Service Department.  To date, Civil Service has not set Plaintiff's appeal for hearing before an Administrative Law Judge as properly requested.

11.     In a letter dated March 19, 2019, Cheritta Johnson, Assistant Director, Court and Detention Services – Security Division, discharged Plaintiff from his employment.  Plaintiff received the discharge letter shortly after March 19, 2019.

12.     Plaintiff timely submitted his appeal of Defendant's decision to the Director of Court and Detention Services.  Plaintiff's right of appeal is set forth in Chapter 34, Sections 37-40 (notably but not exclusively), Dallas City Code, and Dallas City Charter Chapter XII, Section 4.

13.     Since the latter date, Plaintiff has been denied due process appeals to seek reinstatement to employment in direct contrast to Defendant's policies and procedures.  As a result, Plaintiff has been denied an opportunity to obtain reinstatement of his wages and benefits as well.

14.     Defendant has yet to schedule a hearing before Civil Service.

### IV.  CAUSES OF ACTION

**A.      42 U.S.C. Section 2000e-2(a), (e) and (m)**

15.     Plaintiff incorporates the facts set forth in Section III, above.

16.     After allegations of misconduct were reported against Plaintiff, Defendant began to engage in impermissible employment practices against Plaintiff, including but not limited to reasons based on color and national origin.  Other similarly situated employees of different ages, colors and national origin who were accused of similar and often worse misconduct than Plaintiff were treated more favorably than Plaintiff as they were either not reassigned, denied lateral

moves or not disciplined either at all or to the extent that Plaintiff was.

17. As a direct and proximate result of the acts of Defendant City, as set forth above, Plaintiff was subject to improper and disparate treatment and discipline that was impermissible and not applied consistently or equally among other employees of Defendant's Equipment Building Services/Dallas Security Division. The investigations against the above-named employees were conducted or overseen by Defendant's Human Resources and it was the latter department that submitted its findings against the above individuals in the same investigation and report.

18. Plaintiff is an employee within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") and belongs to classes protected under Title VII, namely Caucasian (White), Male, and over the age of 40. His continued employment with Defendant coupled with his strong performance evaluations demonstrate that Plaintiff was highly qualified for his position. As set forth herein, as a result of Defendant's actions, Plaintiff was subject to an adverse employment action. Finally, other similarly situated employees were treated more favorably than Plaintiff in that they were given modest suspensions or no discipline at all; specifically, Doeringsfeld (who retired before any discipline was dispensed) is white, Wigenton and Houston are black, and Gonzales is Hispanic.

19. Defendant's acts and omissions against Plaintiff caused damages to Plaintiff as referenced herein. As a direct and proximate result of the acts of Defendant, its employees, supervisors and officers, as set forth above, Plaintiff's professional career has been irreversibly damaged. Plaintiff has suffered great physical and emotional damage, mental pain, suffering and anguish, loss of income, embarrassment, loss of esteem in the eyes of the community and his colleagues, and in all reasonable probability, will continue to suffer in this manner far into the future. Plaintiff's damages flow directly from, and are intimately connected to, the deprivations, violations, and infringements of Plaintiff's statutory rights as guaranteed under Title VII as well

as under the Age Discrimination in Employment Act.

**B.     Retaliation**

20.     Plaintiff incorporates paragraphs 5 - 19, above as if fully set forth herein.

21.     Prior to the allegations against Plaintiff in 2018, Plaintiff consistently fulfilled his professional obligations with Defendant, its employees, and citizens.

22.     Subsequently, and as a result of the latter allegations, employees of Defendant's police department engaged in a pattern of retaliation that adversely effected Plaintiff's ability to perform his day-to-day work as a police officer.  Plaintiff engaged in protected activity as he discharged his employment practices in a lawful way that was consistent with Defendant's policies against favoritism or racism while he taught and guided fellow employees per his duties, yet the actions of Defendant as alleged in this Second Amended Complaint support Plaintiff's reasonable belief that Defendant violated Plaintiff's rights under Title VII.  Plaintiff and independent witnesses opposed Defendant's wrongful allegations of racist acts and statements and discrimination against him, but Plaintiff was terminated from his employment anyway as a result of Defendant's flawed and biased investigation and hearing against Plaintiff.  Defendant, via its police department, was the agency which had authority to not only receive and investigate the allegations against Plaintiff, but also was the agency which had the authority to supervise and discipline employees such as Plaintiff.  Unlike other similarly situated employees, Defendant fired Plaintiff based on unfounded and unproven allegations of racist behavior while he properly and lawfully carried out his duties.

**C.     Violation of Due Process Clause Under the Fourteenth Amendment to the United States Constitution; United States Constitution and State Constitutional Claims**

23.     Plaintiff incorporates paragraphs 5 - 22 as if fully set forth herein.

24. As specified below, Plaintiff seeks equitable relief as appropriate and damages for the violation of his rights under the United States Constitution as protected by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

**i. United States Constitution Amendment XIV; Texas Constitution Article I, Section 3.**

25. Plaintiff incorporates paragraphs 5 – 24 as if fully set forth herein.

26. As specified below, Plaintiff has been denied equal rights under the law, and equality under the law because of his sex, race, and age.

**ii. United States Constitution Amendment XIV, and Wrongful Discharge**

27. Plaintiff incorporates paragraphs 5 – 26 as if fully set forth herein.

28. Plaintiff has been deprived of liberty, property, and privileges, and in some manner disfranchised, without due course of law.  In Defendant's Notice of Discharge Letter to Plaintiff dated March 19, 2019, Cheritta Johnson, Defendant's Assistant Director of Court and Detention Services – Security Division, stated that pursuant to authority vested in her by Defendant's City Charter, Plaintiff was being discharged that day from his employment with Defendant.  Ms. Johnson continued by stating that, "The Personnel Rules of the City of Dallas entitle you to appeal this action within ten (10) working days."  While Defendant did not specify which part of the Personnel Rules it was referring to, Plaintiff timely appealed the wrongful termination by filing written notice with Defendant's Court and Detention Services on March 25, 2019, in accordance with instructions given by Ms. Jackson and in accordance with the Personnel Rules to which she referred.

29. Defendant arbitrarily deprived Plaintiff of his liberty interest in continued employment as protected by the due process clause of the United States Constitution.  In Defendant's refusal to afford Plaintiff a meaningful opportunity to be heard and be reinstated to employment in accordance with its own policies and procedures (Defendant's Personnel Rules, Chapter 34,

Section 38), Defendant made charges against Plaintiff that might seriously damage his standing in the community and otherwise imposed a stigma on Plaintiff that forecloses or limits his freedom to take advantage of other employment opportunities.  The stigma was imposed in or as a result of the discharge process, the charges were made public, and Plaintiff was denied a meaningful hearing to clear his name.  Defendant's actions were malicious, wanton, oppressive, or recklessly disregarded Plaintiff's rights in that Defendant, via its own City Council or subsets of government in which is passed on the authority, adopted its own policy regarding an appeal process for aggrieved employees, told Plaintiff what to do to exercise that right, and then for three years running has continually blocked Plaintiff from exercising the right that Defendant created.

30.     Plaintiff was deprived of his property interests.  Plaintiff had a property interest and right to his civil service position of sergeant in the Dallas Equipment Building Services/Dallas Security Division.  Said right was conferred by Defendant City's municipal statutes, Civil Service Code of Rules and Regulations, and the City's Personnel Rules (as cited and mentioned above).  The latter rules and regulations provided Plaintiff may only be discharged for cause and that Plaintiff is entitled to an appeal of the decision to discharge his from employment.  Plaintiff's employment was arbitrarily and capriciously terminated on March 19, 2019, and he has been denied all appeals of that decision, despite Defendant's expressed policy (above) and Defendant's own solicitation to Plaintiff for Plaintiff to exercise those options.  By denying Plaintiff of rights afforded to other similarly-situated employees of Defendant, Plaintiff received treatment different from rights and remedies received by similarly-situated employees and that the unequal treatment resulted from Defendant's discriminator intent. (Plaintiff sought specific information regarding other similar investigations and similarly-situated individuals from Defendant via an Open Records Request dated January 29, 2019.  Defendant sought a protective

opinion from the Texas Attorney General, but the Attorney General's Opinion stated that Defendant had to turn over all requested items excepts highly personal information like employees' addresses and phone numbers. Despite the Attorney General's clear Opinion and a subsequent request for the public information, Defendant continues to ignore the Opinion and Plaintiff's legitimate requests and refuses to produce any of said public information, further depriving Plaintiff of his due process rights by blocking a state authorized remedy.)

31. Plaintiff alleges that Defendant's acts or omissions on each occasion constituted a wrongful discharge of Plaintiff's employment with Defendant City and its Equipment Building Services/Dallas Security Division. As a result thereof, Plaintiff suffered damages to his liberty interests in the form of lost wages, seniority and benefits.

32. Defendant promulgated rules, policies and regulations to afford due process to and to protect the liberty and property rights of its employees, including Plaintiff. However, in this case, Defendant has intentionally refused to follow its own guidelines which has deprived Plaintiff of his rights to liberty and property. Furthermore, the law requires that Plaintiff be given a meaningful opportunity to be heard at any hearing. The "pre-termination" hearing was a farce in that the title of the hearing alone is a clear manifestation of what Defendant's plans were for Plaintiff's destiny (as also reflected by the fact that Defendant prepared a pre-termination letter on December 17, 2018, which was prior to Defendant even notifying Plaintiff of the allegations against Plaintiff) and also based on the undisputed fact that Defendant did not provide any evidence at the hearing while Plaintiff and his witnesses clearly and unequivocally refuted each and every allegation against Plaintiff. Defendant's employees, from those who participated in the investigation, employees in Human Resources and in Defendant's Police Department, all acting with the approval of Defendant, engaged in a pattern of behavior that resulted in an unlawful deprivation of Plaintiff's rights as set forth herein.

**PLAINTIFF'S SECOND AMENDED COMPLAINT – Page 10 of 14**

33. On December 20, 2018, Defendant sent Plaintiff a "Notice of Pre-Termination Hearing," which was held on January 14, 2019. The only witnesses at the latter hearing testified on behalf of Plaintiff and expressly refuted all the allegations against Plaintiff. Nevertheless, in its Notice of Discharge, Defendant stated that Plaintiff's "…presentation did not refute the violations." The latter hearing was a sham and did not afford Plaintiff a meaningful opportunity to be heard, further evidence by Defendant's own classification of the meeting to be a "Pre-Termination Hearing." Subsequently, Defendant denied Plaintiff of a true, meaningful opportunity to be heard by denying him his rights to appeal and have a hearing. As set forth herein, Plaintiff was discharged based on false charges of Plaintiff being accused of allegedly making racist statements, which he and other witnesses denied. Plaintiff's termination was publicized by Defendant. Per Defendant's Personnel Rules, Plaintiff timely requested a hearing to clear his name, but Defendant denied Plaintiff a meaningful opportunity to be heard prior to his discharge becoming final. Plaintiff has worked in law enforcement for decades, serving and working with people of all races and colors. To be accused of and fired for claims built on a false pretext of racism stigmatized Plaintiff and was an assault on his career and reputation. Furthermore, of all the individuals identified in paragraph 5 (above), Plaintiff is the only employee who was terminated, thus, a further example of disparate treatment aimed at plaintiff only; aside from Doeringsfeld, who retired before discipline was given, the other three employees, none of whom were white, received no more than one week off, if anything. As a result of Defendant's actions, Plaintiff has been deprived of a liberty interest as promulgated and promised by Defendant without due process and in a uniquely disparate manner.

**D.     42 U.S.C § 1983 CLAIMS**

34.     Plaintiff incorporates and reavers the allegations set forth in Sections A - C**,** above.

35.     As set forth above, Plaintiff contends that the conduct complained of was committed by a

person or persons (including, but not limited to Ms. Jackson as well as others who supported the investigation against Plaintiff) acting under a color of state law and that the conduct unlawfully, recklessly, maliciously, and with deliberate disregard, deprived Plaintiff of his rights, privileges, or immunities secured by the Constitution or the laws of the United States.  Said violations were by actions pursuant to official municipal policy, or pursuant to misconduct so pervasive among non-policy making employees of the municipality as to constitute a custom or usage with the force of law.  Alternatively, after notice to the municipal policy-making officials of the misconduct complained of, Plaintiff was injured by the deliberate indifference to or tacit authorization of such conduct.  Specifically, Ms. Jackson stated in the Notice of Termination that her authority was derived from Defendant's City Charter and as Assistant Director of Defendant's Court and Detention Services – Security Division, for whom Plaintiff worked as a supervisor.  Defendant identified a clear policy (Defendant's Personnel Rules), known, adopted and enforced by its policy makers and authorized employees, and the deprivation of Plaintiff's rights under the policy were a constitutional violation of Plaintiff's rights (While Defendant only made a general reference to its Personnel Rules, the specific applicable section is 34-38, "Grievance and Appeal Procedures.")

36.     Supervisory officers or officials, including Ms. Jackson and those who signed off on the investigation against Plaintiff, who were employees of Defendant, affirmatively participated in acts that caused Plaintiff's constitutional deprivations and/or implemented unconstitutional policies that causally resulted in Plaintiff's injury.  Defendant's failure to supervise or train said employees amounted to gross negligence or deliberate indifference.

37.     Plaintiff alleges that the acts and omissions contradict the Dallas City Charter and the City's Personnel Rules (Chapter 34, Dallas City Code).  Plaintiff has clearly set forth violations

of his constitutional rights above, therefore affording him rights and remedies under Section 1983.

## V. ATTORNEY'S FEES

38. Plaintiff seeks reasonable attorney's fees as provided for in 42 U.S.C. § 1988(b), reasonable attorney's fees for the pursuit of this action under 42 U.S.C. § 2000e–5(g)(2)A, (k); and 29 U.S.C. § 2617(a)(3).

## VI. JURY TRIAL DEMAND

39. Plaintiff requests a jury trial on the issues raised in this original Complaint.

## VII. DAMAGES AND PRAYER FOR RELIEF

Wherefore, Plaintiff requests the following relief:

a.   Compensatory damages to Plaintiff in an amount to be determined by the trier of fact;

b.   Statutory damages;

c.   Liquidated damages;

d.   Punitive damages in an amount to be determined by the trier of fact;

e.   Past and future lost wages, seniority and pension benefits;

f.   Reasonable attorney's fees and costs;

g.   Pre- and post-judgment interest as allowed by law;

h.   Such other and further relief, in equity and in law, to which Plaintiff may be justly entitled.

Submitted this 13th day of July, 2022.

                    Respectfully,

                    /s/ Stephen L. Enda
                    Stephen L. Enda
                    SBN: 06612500
                    Weiner, Glass & Reed, L.L.P.
                    6440 N. Central Expressway, Suite 308
                    Dallas, Texas 75206
                    Telephone: (214) 750-9119
                    Telecopier: (214) 750-9127

                    ATTORNEY FOR PLANTIFF

## Certificate of Service

This is to certify that a true and correct copy of Plaintiff's Second Amended Complaint was served on Ms. Sarah Mendola, counsel for record for Defendant City of Dallas, Texas, in accordance with the Federal Rules of Civil Procedure on this the 13th day of July, 2022.

                    /s/ Stephen L. Enda
                    Stephen L. Enda