IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PAUL GAUMOND, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-00624-E |
| | § | |
| CITY OF DALLAS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following motions: (1) Plaintiff's Motion for Extension of Time to File Responsive Pleadings ("Motion to Extend"), (Doc. 33); (2) Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("Second Motion to Dismiss"), (Doc. 24); (3) Plaintiff's Motion for Leave to File Second Amended Complaint ("Motion for Leave"), (Doc. 34); and (4) Defendant's Motion to Strike Plaintiff's Second Amended Complaint ("Motion to Strike"), (Doc. 35). Having considered the motions, the responses and replies, and the relevant law, the Court rules as follows:

1. Plaintiff's Motion to Extend, (Doc. 33), is **DENIED**;
2. Defendant's Second Motion to Dismiss, (Doc. 24), is **GRANTED**;
3. Plaintiff's Motion for Leave, (Doc. 34), is **DENIED**; and
4. Defendant's Motion to Strike, (Doc. 35), is **GRANTED**;

Because Plaintiff has already amended his pleadings once as a matter of course, and the Court—for the reasons discussed below—concludes that Plaintiff has alleged his best case, all of Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**.

# I.  Background

### A.    Factual Background

This case arises out of the termination of Plaintiff Paul Gaumond ("Plaintiff") from his employment with Defendant City of Dallas, Texas ("Defendant" or "the City"). Plaintiff alleges that until March 19, 2019, he was employed as a Sergeant with the City of Dallas. [1]

On December 20, 2018, Plaintiff learned that he and several other male officers were the subject of an internal investigation into alleged misconduct committed in "the private line of work." (Doc. 20, pg. 2, ¶ 5). Specifically, Plaintiff was alleged to have engaged in racially motivated conduct and made racist statements. (Doc. 20, pg. 6, ¶ 22). On or about December 20, 2018, Plaintiff was placed on administrative leave and informed that Defendant would hold a "pre-termination hearing" regarding the allegations of his misconduct. (Doc. 20, pgs. 2-3, ¶ 5). On January 14, 2019, Plaintiff attended the pre-termination hearing and presented evidence and witnesses in his favor. (Doc. 20, pg. 3, ¶ 5).

On or about March 19, 2019, Plaintiff received a letter from Cheritta Johnson ("Johnson")—the Assistant Director of the Security Division of the City of Dallas's Court and Detention Services—informing him that he was discharged from his employment. (Doc. 20, pg. 4, 12). In that letter, Johnson informed Plaintiff that he was entitled to an appeal of the termination decision within ten working days of his discharge pursuant to the Personnel Rules of the City of Dallas. (Doc. 20, pg. 7, ¶ 28). Plaintiff timely appealed what he asserted to be a wrongful

---

[1] Plaintiff's pleadings contradict themselves as to which department of the City of Dallas employed him. Plaintiff affirmatively pleads that, "[u]ntil March 19, 2019, [he] was continuously employed by the City of Dallas, Texas, in its Equipment Building Services/Security Division since on or about August 13, 2013, having been hired at the rank of Sergant (sic)." (Doc. 20, pg. 1). However, he alleges that the individual who discharged him was the Assistant Director of the City of Dallas's Court and Detention Services—Security Division. (Doc. 20, pg. 4, ¶ 11). For its part, Defendant indicates in its Second Motion to Dismiss that this action arose out of Plaintiff's "separation of employment with the City's Department of Court and Detention Services." (Doc. 24, pg. 7).

termination by filing written notice with Defendant's Court and Detention Services on March 25, 2019. (Doc. 20, pg. 7, ¶ 28). Plaintiff also requested relevant documents from Defendant for use in his appeal via an open records request. (Doc. 20, pg. 3, ¶ 5). Defendant sought a protective opinion from the Texas Attorney General's Office, which concluded that Defendant was required to produce the requested documents, provided that it did not disclose the personal information of other individuals. (Doc. 20, pg. 3, ¶ 5). As of the filing of Plaintiff's First Amended Complaint, Plaintiff had received neither a hearing to appeal his termination nor the written documents he requested. (Doc. 20, pg. 3, ¶5).

On March 18, 2021, Plaintiff initiated this action by filing his Original Complaint and Jury Demand. (Doc. 1). Plaintiff asserted the following claims against Defendant: (1) unlawful discrimination on the basis of race, color, national origin, sex, and age[2] under Title VII of the Civil Rights Act of 1965 ("Title VII"), 42 U.S.C §§ 2000e, *et seq*; (2) unlawful retaliation under Title VII, *Id.*; and (3) violation of his constitutional rights under (a) the Due Process Clause of the Fourteenth Amendment, U.S. CONST. AMEND. XIV, (b) the Equal Protection Clause of the Fourteenth Amendment, *Id.*, and (c) violation of the Equal Protection Clause of the Texas Constitution, TEX. CONST., art. 1, § 3.

### B.     Procedural Background

On December 6, 2021, Defendant filed its First Motion to Dismiss Plaintiff's Original Complaint. (Doc. 7). Rather than responding to Defendant's First Motion to Dismiss, Plaintiff filed three consecutive motions for extension of time to file a response, (Doc. 9; Doc. 16; Doc. 18), each of which were unopposed and granted by the Court, (Doc. 10; Doc. 17; Doc. 19). On March 23,

---

[2] Title VII of the Civil Rights Act of 1964 does not provide a cause of action for age discrimination, *see* 42 U.S.C. §§ 2000e, *et seq.*, which is fatal to his age discrimination claim as discussed below.

2022, Plaintiff filed his First Amended Complaint, (Doc. 20), which mooted the Defendant's First Motion to Dismiss, (Doc. 21). The First Amended Complaint asserted the same claims as the Original Complain but included additional factual allegations.

On April 21, 2022, Defendant filed its Motion to Dismiss Plaintiff's First Amended Complaint, (Doc. 24), which is currently pending before the Court. Rather than timely responding to the Second Motion to Dismiss, Plaintiff *again* filed three successive unopposed motions for extension of time to file a response, (Doc. 26; Doc. 28; Doc. 30), each of which were again granted by the Court, (Doc. 27; Doc. 28; Doc. 31). Plaintiff never responded to the Second Motion to Dismiss. Instead, on July 13, 2022, he filed a Second Amended Complaint without leave of court. (Doc. 32). Plaintiff then filed a *fourth* motion for extension of time to respond to the Second Motion to Dismiss, (Doc. 33), which is currently pending before the Court. This is his seventh overall request to extend filing deadlines. Plaintiff also filed an out-of-order Motion for Leave to File Second Amended Complaint, (Doc. 34). Defendant opposed the Motion for Leave and filed a Motion to Strike Plaintiff's Second Amended Complaint, (Doc. 35), which is opposed by Plaintiff and currently pending before the Court.

## II.   LEGAL STANDARD

### A.      Rule 12(b)(6)

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal

quotation marks and citations omitted). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, a claim "is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019).

**B.    Rule 15(a)**

Federal Rule of Civil Procedure 15(a)(1) provides that a party may amend its pleadings once as a matter of course within twenty-one days of the service of (1) the pleading, (2) a responsive pleading, or (3) a motion under Rule 12(b), (e), or (f). FED. R. CIV. P. 15(a)(1). Otherwise, a party may only amend its pleading with leave of court or the written consent of the opposing party. FED. R. CIV. P. 15(a)(2). Rule 15 instructs courts to "freely give leave when justice so requires." *Id.*

"Although Rule 15 evinces a bias in favor of granting leave to amend, it is not automatic." *Matter of Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996) (internal quotation marks and citations omitted). "A decision to grant leave is within the discretion of the trial court." *Id.* (citation omitted). The Supreme Court has identified five factors relevant to a trial court's decision whether to grant leave: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the non-movant; and (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Fifth Circuit has affirmed denials of leave to amend where it determined that the proposed amendment would be futile after analyzing the claims. *See Edoinwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017) (where the proposed amended complaint failed to state a claim under 42 U.S.C. § 1983). Additionally, the Fifth Circuit has said that "[g]ranting leave is not required . . . if the plaintiff has already pleaded his best case." *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009).

### III.  ANALYSIS

### A.  Plaintiff's Motion for Extension to File Responsive Pleading is DENIED.

The Court first considers Plaintiff's fourth motion for extension of time to respond to the Second Motion to Dismiss. This is his *seventh* overall motion for extension of time. Defendant filed its First Motion to Dismiss on December 6, 2021. After three successive motions to extend, Plaintiff filed the First Amended Complaint on March 24, 2022—108 days after Defendant filed its First Motion to Dismiss. Defendant filed its Second Motion to Dismiss on April 21, 2022, and Plaintiff filed three more successive motions for extension of time to respond. Plaintiff never responded but instead filed the instant Motion to Extend on July 14, 2022—eighty-four (84) days after Defendant filed its Second Motion to Dismiss.

Federal courts have the inherent power to manage their own docket. *See Chambers v. NASCO*, 501 U.S. 32, 43-46 (1991). Given Plaintiff's continued inability to comply with the rules

governing responsive motions and pleadings embodied in Federal Rule of Civil Procedure 15, the Court finds no reason to grant the Plaintiff's seventh overall request to extend filing deadlines. Accordingly, Plaintiff's Motion for Extension of Time, (Doc. 33), is **DENIED.**

**B.      Defendant's Second Motion to Dismiss Plaintiff's First Amended Complaint is GRANTED.**

The Court next considers Defendant's Second Motion to Dismiss. For the reasons discussed below, the Court concludes that Plaintiff's First Amended Complaint fails to state any claim upon which relief can be granted. Accordingly, Defendant's Second Motion to Dismiss, (Doc. 24), is **GRANTED**.

*1.      Plaintiff has not stated a claim of unlawful discrimination under Title VII.*

Title VII of the Civil Rights Act of 1964 protects employees from unlawful discrimination on the basis of race, color, religion, sex, and national origin. 42 U.S.C.A. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer to . . .  discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such an individuals' race, color, religion, sex, or national origin . . . ). Plaintiff alleges that Defendant violated Title VII by unlawfully discriminating against him on the basis of his race, color, national origin, sex, and age. The Court concludes that Plaintiff has failed to state a plausible claim for discrimination under Title VII and, as such, his discrimination claim must be dismissed.

In *McDonnell Douglas Corp. v. Green*, the Supreme Court laid out the required elements needed for a plaintiff to establish a prima facie case of discrimination under Title VII. 411 U.S. 792 (1973). "To demonstrate a prima facie case of employment discrimination, [Plaintiff] must show that [he] (1) belongs to a protected class; (2) was qualified for the position; (3) experienced adverse employment action; and (4) was similarly situated to other employees who were not

members of [his] protected class and who were treated more favorably." *West v. City of Houston*, 960 F.3d 736, 740 (5th Cir. 2020) (citing *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004)) (internal quotation marks omitted). Plaintiff affirmatively pleads that he belongs to three protected classes—race (white/Caucasian), sex (male), and age (over the age of forty). (Doc. 20, pg. 5, ¶ 18).

To satisfy the "similarly situated" prong, a plaintiff must identify "at least one coworker outside of his protected class who was treated more favorably 'under nearly identical circumstances.'" *Alkhawaldeh v. Dow. Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)). "This coworker, known as a comparator, must hold the 'same job' or hold the same job responsibilities as the Title VII claimant; must 'share[] the same supervisor or' or have his employment status determined by the same person' as the Title VII claimant; and must have a history of 'violations' or 'infringements' similar to that of the Title VII claimant." *Id.* (quoting *Lee*, 574 F.3d at 260).

The *McDonnell Douglas* framework is an evidentiary rather than a pleading standard. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). However, plaintiffs must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016). Accordingly, the Fifth Circuit has affirmed dismissals for failure to state a claim where plaintiffs failed to allege sufficient facts to support a reasonable inference on elements of the *McConnell Douglas* framework. *See, e.g., Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021) (dismissing claims where plaintiff failed to plead facts on the "similarly situated" factor because plaintiff did not identify a comparator); *Chhim*, 836 F.3d at 471 (dismissing claims because the plaintiff "plead[] no facts that suggest the applicant hired by the [defendant] was less qualified than [plaintiff] or was similarly

situated"); *Davis v. Tex. Health and Human Servs. Comm'n*, 761 F.App'x 451, 454 (5th Cir. 2019) (dismissing claims because plaintiff failed to allege facts from which the district court could reasonably infer that plaintiff was treated less favorably).

The Court concludes that Plaintiff has not stated a plausible claim of discrimination under Title VII because he (1) fails to specify a protected class with respect to national origin and (2) fails to identify comparator employees with respect to his allegations of sex and race discrimination. First, with respect to the first element of the *McDonnel Douglass* framework, plaintiff identifies two protected classes under Title VII—race (white/Caucasian) and sex (male). Plaintiff makes vague reference to being treated differently based on national origin but fails to identify his national origin. Thus, he has not stated a plausible claim for discrimination based on national origin under Title VII.

With respect to his allegations of discrimination based on race and sex, Plaintiff does not allege facts sufficient support a reasonable inference in his favor on the fourth element—the "similarly situated" element. The First Amended Complaint does not identify any comparator employee who is outside of Plaintiff's protected classes and received more favorable treatment than Plaintiff under nearly identical circumstances. *See Alkhawaldeh*, 851 F.3d at 426. Instead, Plaintiff makes only a conclusory allegation that other officers of different colors and national origin received preferential treatment. (Doc. 20, pg. 5, ¶¶ 16, 18). Accordingly, the Court must conclude that Plaintiff has failed to allege a plausible claim for discrimination based on race or sex under Title VII.

The Court also concludes that Plaintiff has failed to allege a plausible claim of age discrimination. Plaintiff asserts this claim under Title VII. However, Title VII of the Civil Rights Act does not provide a cause of action for age discrimination. *See* 42 U.S.C. § 2000e-2(a), (e), &

(m) (prohibiting employment discrimination on the basis race, color, religion, sex, or national origin, but not age). Thus, Plaintiff has not articulated any plausible theory of liability for age discrimination. Because Plaintiff has not stated a claim of age, race, sex, or national origin discrimination upon which relief can be granted, the Court concludes that his discrimination claim must be dismissed.

### 2.     *Plaintiff has not stated a claim for unlawful retaliation under Title VII.*

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to retaliate against an employee who "oppose[s] any practice made an unlawful employment practice by [Title VII], or . . . ma[kes] a charge, testif[ies], assist[s], or participate[s] in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C § 2000e-3(a). To establish a prima facie retaliation claim under Title VII, a plaintiff must show that: "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *Thomas v. Trege*, 913 F.3d 458, 463 (5th Cir. 2019). As with Title VII discrimination claims, a plaintiff must at least "plausibly allege facts going to the ultimate elements of [a Title VII retaliation claim] to survive a motion to dismiss. *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019). The Court concludes that Plaintiff has failed to do so, and, as such, his retaliation claim must be dismissed.

Plaintiff appears to allege that he engaged in protected activity under Title VII insofar as he "opposed Defendant's wrongful allegations of racist acts and statements and discrimination against him." (Doc. 20, pg. 6 ¶ 22). Defendant argues that that this is insufficient to establish that Plaintiff engaged in protected activity because (1) "[d]enial of one's own wrongdoing is not protected activity[,]" and (2) "Plaintiff [does not] allege how he opposed 'discrimination' against

himself, or the nature of the discrimination he opposed." (Doc. 24, pg. 15). However, the Court need not reach the issue of whether this conduct constitutes protected activity because Plaintiff has not plausibly alleged that he was subjected to an adverse employment action as a result of his purported protected activity.

"An adverse employment action is one that 'a reasonable employee would have found . . . [to be] materially adverse, which in this context means that it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Hernandez v. Yellow Transp., Inc*., 670 F.3d 644, 657 (5th Cir. 2012) (quoting *Aryain v. Wal-Mart Stores Tex.* LP, 534 F.3d 473, 484 (5th Cir. 2008)) (alterations in original). "Although that is a fact-specific inquiry, an employment decision tends to be 'materially adverse' when it changes 'job title, grade, hours, salary, or benefits' or effects a 'diminution in prestige or change in standing among . . . co-workers.'" *Hudson v. Lincare, Inc.*, — F.4th — , No. 22-50149, 2023 WL 240929, at *5 (5th Cir. Jan. 18, 2023) (quoting *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009)).

"In determining whether an adverse employment action occurred, [courts] focus on the final decisionmaker." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (citing *Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002)). "The actions of ordinary employees are not imputable to their employer [under Title VII] unless they are conducted 'in furtherance of the employer's business.'" *Id.* (quoting *Long v. Eastfield College*, 88 F.3d 300, 306 (5th Cir. 1996)). "There must, however, be a 'direct relationship between the allegedly discriminatory conduct and the employer's business.'" *Id.* (quoting *Long*, 88 F.3d at 306).

The only adverse employment actions the Court can discern from Plaintiff's First Amended Complaint are: (1) an alleged "pattern of retaliation" he experienced at the hands of employees of the Dallas Police Department that "adversely effected (sic) [his] ability to perform his day-to-day

work as a police officer[;]" and (2) his termination. (Doc. 20, pg. 6, ¶ 20). Plaintiff has failed to plead facts sufficient to state a plausible claim of unlawful retaliation based on either.

First, Plaintiff's allegations relating to the purported "pattern of retaliation" fail because they are conclusory. As an initial matter, Plaintiff fails to provide any facts whatsoever detailing the alleged pattern of retaliation. Moreover, Plaintiff does not assert that the alleged pattern of retaliation affected his job title, grade, hours, salary, benefits or diminished his prestige or standing among his co-workers. Instead, he makes the conclusory assertion that the conduct of the unnamed officers "adversely effected (sic) [his] ability to perform his day-to-day work[.]" (Doc. 20, pg. 6, ¶ 20). Because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to survive a motion to dismiss, *Iqbal*, 556 U.S. at 678, this alone renders Plaintiff's allegation of a pattern of retaliatory conduct insufficient to support a claim of unlawful retaliation under Title VII.

However, even if Plaintiff pled factual content detailing the conduct of the unnamed officers, Plaintiff has not alleged any factual content to support an inference that the City of Dallas is liable for their conduct under Title VII. The officers were not the final decisionmaker with respect to Plaintiff's employment status—Plaintiff affirmatively identifies Johnson as the final decisionmaker. Thus, Plaintiff is alleging that the actions of the officers—as ordinary employees—should be imputed to their employer—the City of Dallas. As the Fifth Circuit explained in *Long v. Eastfield College*, "[e]mployers are liable under Title VII, in accordance with common law agency principles, for the acts of employees committed in the furtherance of the employer's business." 88 F.3d at 306. Plaintiff attempts to connect the officers' actions to the City by alleging that the City, "via its police department, was the agency which had authority to not only receive and investigate the allegations against Plaintiff, but also was the agency which had the authority to supervise and

discipline employees such as Plaintiff." (Doc. 20, pg. 6, ¶ 22). Plaintiff does not allege any facts allowing the Court to draw a reasonable inference that the officers' alleged "pattern of retaliation" was in the furtherance of City business. Thus, the Court concludes that Plaintiff has not plausibly alleged that the City of Dallas is liable for unlawful retaliation under Title VII for the conduct of the unnamed officers. *Iqbal*, 556 U.S. at 678; *Long*, 88 F.3d at 306.

Turning to the matter of Plaintiff's termination, Plaintiff has not plausibly alleged any causal link between his purported protected activity and his termination. It is axiomatic that termination constitutes "adverse employment action." However, Plaintiff still must allege that his purported protected activity was the "but-for" cause of his termination. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). ("Title VII retaliation claims must be proved according to traditional principles of but-for causation[.]"). Plaintiff has failed to plead any facts supporting a reasonable inference that he would not have been terminated but-for his purported protected activity. In fact, Plaintiff does not even allege that he was terminated because of his participation in the pre-termination hearing or his opposition to discrimination against him. Instead, Plaintiff alleges that he engaged in a protected activity by "oppos[ing] Defendant's wrongful allegations of racist acts and statements and discrimination against him, *but . . . was terminated from his employment anyway*." (Doc. 20, pg. 6, ¶ 22) (emphasis added). Even construing the pleadings in a light most favorable to Plaintiff, the First Amended Complaint alleges—at most—that Plaintiff was terminated *despite*, not *because of*, his purported protected activity. Thus, Plaintiff has not plausibly alleged that there was a "causal connection . . .between [his purported] protected activity and [his termination]." *Thomas*, 913 F.3d at 463.

Because Plaintiff has failed to plausibly allege that that he was subjected to an adverse employment action as a result of engaging in a protected activity, the Court concludes that his retaliation claim must be dismissed.

3.      *Plaintiff has not stated a claim of violations of his constitutional rights.*

Plaintiff also brings claims against Defendant for violations of the Fourteenth Amendment of the United States Constitution and Article I, Section 3 of the Texas Constitution. For the reasons discussed below, Plaintiff has failed to state these claims in a manner upon which relief can be granted.

(i)      Federal Constitutional Claims

Plaintiff alleges that Defendant violated his due process and equal protection rights as protected by the Fourteenth Amendment. Specifically, Plaintiff alleges that he has been: (1) deprived—without due process of law—his (a) liberty interest in his standing in the community and (b) property interest in continued employment; and (2) denied equal protection under the law because of his sex, race, and age. (Doc. 20, pgs. 6-9, ¶¶ 24-33). Plaintiff seeks "equitable relief as appropriate and damages for the violation of his rights under the United States Constitution as protected by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983." (Doc. 20, ¶ 24). The Court concludes that these claims must be dismissed because Plaintiff has failed to plausibly state any claim upon which relief can be granted.

With respect to Plaintiff's request for equitable relief, the Court cannot discern from his pleadings the type of equitable relief requested. Plaintiff seeks "equitable relief as appropriate . . . for the violation of his rights under the United States Constitution as protected by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983." (Doc. 20, ¶ 24).  Plaintiff has not filed a response to Defendant's motion to dismiss; as such, this issue remains unbriefed.

Accordingly, there is no grounds on which the Court can determine that Plaintiff has stated a claim upon which equitable relief can be granted.

With respect to Plaintiff's request for damages, the only vehicle through which individuals may seek monetary damages from municipalities for alleged violations of their federal constitutional rights is 42 U.S.C. § 1983. *See Monell v. New York City Dept' of Social Serv.*, 436 U.S. 658 (1978). The Court concludes that Plaintiff has failed to state a claim upon which monetary damages can be granted because he has not identified any official policy or custom that was the "moving force" behind the alleged constitutional violations.

The Supreme Court has made clear that a municipal entity may not be held liable under § 1983 "unless action pursuant to official municipal policy of some nature *caused* the constitutional tort." *Monell*, 436 U.S. at 691 (emphasis added). "While municipalities can be sued directly under § 1983, *Monell* establishes that they 'cannot be found liable on a theory of vicarious liability or respondeat superior.'" *Webb v. Twn. of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (citing, in turn, *Monell*, 436 U.S. at 690-91))). "In other words, 'the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated actions by municipal employees will almost never trigger liability." *Id*. (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001)). Thus, to assert liability under *Monell*, a plaintiff must allege that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski*, 237 F.3d at 578)).

"[T]he identity of [a] policymaker is a question of law, not fact—specifically, a question of state law." *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016) (citing *City of St. Louis*

*v. Praprotnik*, 485 U.S. 112, 124 (1988)). While plaintiffs need not specifically plead the identity of a policymaker to survive a motion to dismiss, they must plead "facts which established that [a] challenged policy was promulgated or ratified by the city's policymaker." *Id.* at 285. The Fifth Circuit has previously determined that, under Texas law, the final policymaker for the City of Dallas is the Dallas City Council. *Id.* at 286; *Bolton v. City of Dallas*, 541 F.3d 545, 550 (5th Cir. 2008) (citing Tex. Loc. Gov't Code § 25.029). Accordingly, to state a claim for damages against the City of Dallas, Plaintiff must plausibly allege that his federal constitutional rights were violated as a result of an official policy promulgated or ratified by the Dallas City Council.  Plaintiff failed to meet this requirement, and, as such, has failed to state a claim for municipal liability under § 1983.

In his First Amended Complaint, Plaintiff alleges that his due process rights were violated as a result of the City's failure to give him a hearing to appeal his termination decision. Specifically, Plaintiff alleges that a city employee—Johnson—violated a city policy, embodied in the Personnel Rules of the City of Dallas, that entitled him to appeal his termination within ten working days of his discharge. (Doc. 20, pg. 7, ¶ 28). According to his pleadings, Plaintiff timely appealed his termination in accordance with the instructions given to him by Johnson yet has been "denied due process appeals to seek reinstatement to employment in direct contrast to [the City's] policies and procedures." (Doc. 20, pg. 7, ¶ 13). Plaintiff does not allege that his due process rights have been violated by an official policy or custom of the City of Dallas. Rather, he alleges that his rights were violated because of the isolated actions of City employee who did not follow the City's official policy. Thus, Plaintiff specifically acknowledges that the "moving force" behind the alleged constitutional violations was not an officially policy or custom, but rather Johnson's failure to follow an official policy—a policy which he has not alleged to be unconstitutional. Because

Defendant cannot be held liable under § 1983 for Johnson's actions though either vicarious liability or respondeat superior, Plaintiff has failed to state a plausible claim under *Monell* that City of Dallas is liable for monetary damages for the violation of his due process rights. *See Webb*, 925 F.3d at 214.

With respect to his equal protection claim, Plaintiff asserts that he "has been denied equal rights under the law, and equality under the law because of his sex, race, and age." (Doc. 20, pg. 6, ¶ 26). Plaintiff alleges that he was denied "rights afforded to other similarly-situated employees . . . [and] received treatment different from rights and remedies received by similarly-situated employees and that the unequal treatment resulted from the Defendant's discriminator (sic) intent," (Doc. 20, pg. 8, ¶ 30). Here again, however, Plaintiff fails to identify any City policy or custom of sex, race, or age discrimination that resulted in his alleged unequal treatment. In fact, he makes no factual allegations on this point relating to the actions of any particular City employee. Thus, he has failed to allege a plausible claim under *Monell* that the City of Dallas is liable for monetary damages for the violation of the equal protection rights. *See Webb*, 925 F.3d at 214. Because Plaintiff has failed to state a claim upon which relief—equitable or monetary—can be granted for the alleged violation of his federal constitutional rights, the Court concludes that these claims must be dismissed.

(ii)    <u>Texas Constitutional Claims</u>

Plaintiff alleges that the same conduct that violated his federal constitutional rights also violated his rights under the equal protection clause of the Texas Constitution. (Doc. 20, pg. 6, ¶¶ 25-26). The Court concludes that he has failed to state a claim upon which relief can be granted under the Texas Constitution as well.

With respect to Plaintiff's request for monetary damages for the alleged violation of the Texas Constitution, Plaintiff's claim fails because there is no vehicle through which he can obtain damages. The Texas Constitution does not create private causes of action for monetary damages. *City of Beaumont v. Boullion*, 896 S.W.2d 145, 149 (Tex. 1995) (holding that no independent cause of action for damages against governmental entities exists for violations of the free speech and assembly clauses of the Texas Constitution); s*ee also Harrison v. Texas Dep't of Criminal Justice-Institutional Div.*, 915 S.W.2d 882, 888 (Tex. App.—Houston [1st Dist.] 1995, no writ) (holding no implied private right of action for money damages exists under the Texas Constitution); *Vincent v. West Texas State Univ.*, 895 S.W.2d 469, 475 (Tex. App.—Amarillo 1995, no writ) (holding that the reasoning in *Bouillion* applied to actions for damages under equal protection clause of Texas Constitution); *Harris Cnty. Hosp. Dist. v. Cornelious*, No. 01-98-01200-CV, 2000 WL 1682503, at *6 (Tex. App.—Houston [1st Dist.], Nov. 9, 2000) (same).

Texas does not have a statutory provision comparable to § 1983 that creates a private cause of action for violations of the Texas Constitution. *Bouillion*, 896 S.W.2d at 147. Moreover, § 1983 cannot be used to pursue a cause of action for an alleged violation of state constitutional rights. *See* 42 U.S.C § 1983 ("Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States] . . . ."); *Wyatt v. Cole*, 504 U.S. 158, 161 ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their *federally* guaranteed rights and to provide relief to victims if such deterrence fails.") (emphasis added) (citation omitted). Thus, Plaintiff has failed to state a claim for the violation of the Texas Constitution upon which the relief of monetary damages can be granted.

Additionally, for the same reason that he fails to state a claim upon which equitable relief under the Fourteenth Amendment, Plaintiff has not stated a plausible claim for equitable relief under the Texas Constitution. Thus, Plaintiff has failed to state a plausible claim for any sort of relief under the Texas Constitution. As such, the Court concludes that his claim under the Texas Constitution must be dismissed.

In sum, the First Amended Complaint fails to state any claim upon which relief can be granted. As such, Defendant's Second Motion to Dismiss, (Doc. 24), is **GRANTED.**

**C.      Plaintiff's Motion for Leave to File Second Amended Complaint is DENIED.**

The Court next considers Plaintiff's Motion for Leave to File Second Amended Complaint. As noted above, courts consider the following factors when determining whether to grant leave to amend after a plaintiff has already amended his pleadings as a matter of course: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the non-movant; and (5) futility of amendment. *Foman*, 371 U.S. at 182. Given Plaintiff's numerous previous motions for extension of time to file responsive pleadings and the deficiencies of both the first and second amended complaints, the Court concludes that granting leave would cause undue delay, that Plaintiff has repeatedly failed to cure the deficiencies in his pleadings, and that amendment would be futile.

First, allowing Plaintiff to file his Second Amended Complaint would cause undue delay. This suit was filed on March 18, 2021. However, Plaintiff waited seven months to serve Defendant. (Doc. 36, pg. 9). This delay, coupled with Plaintiff's failure to respond to either of the Defendant's two initial motions to dismiss, means that this case remains in the early pleadings stage almost two years after it was initiated. Plaintiff's Second Amended Complaint—which he filed without leave of court—asserts the same claims as his Original Complaint and his First Amended Complaint.

For the reasons discussed below, however, the Second Amended Complaint cures none of the defects in those complaints. Thus, allowing Plaintiff to file his Second Amended Complaint would only further delay this case without correcting any of the issues that have plagued his pleadings to date.

Plaintiff has repeatedly failed to cure the deficiencies with respect to his claim and granting him a third bite at the apple would be futile. As discussed above, Plaintiff's First Amended Complaint does not cure the deficiencies in his Original Complaint because it does not state any claims upon which relief can be granted. While Plaintiff's Second Amended Complaint is stricken from the record for the reasons discussed below, the Court considered the allegations contained therein for the purposes of determining whether it would correct the deficiencies in the First Amended Complaint. *See Edionwe*, 860 F.3d at 295 (considering plaintiff's proposed amended complaint for the purposes of determining whether amendment would be futile). It would not.

The Second Amended Complaint (1) adds some factual allegations not contained in the First Amended Complaint and (2) appears to repleads his claim of age discrimination under the Age Discrimination in Employment Act. These additions, however, do not cure the defects that proved fatal to Plaintiff's First Amended Complaint.[3] Thus, the Court concludes that Plaintiff has

---

[3] With respect to his  discrimination claims, Plaintiff identified four male comparators, but does not plead facts supporting a reasonable inference that he was treated less favorably than those comparators under nearly identical circumstances because: (1) the comparators, while of a different race, were accused of violating different rules than Plaintiff; (2) the comparators were of the same sex as Plaintiff; and (3) Plaintiff does not allege that they were outside of Plaintiff's protected class with respect to age. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 116 (1996) (holding that ADEA claims are analyzed under the same framework as Title VII claims). With respect to his retaliation claim, the Second Amended (1) does not cure the defects contained in his First Amended Complaint and (2) affirmatively pleads himself out of a retaliation claim because the "protected activity" he identifies there is not, as a matter of law, protected under 42 U.S.C. § 2000e-3(a). With respect to his federal constitutional claims, like his First Amended Complaint, Plaintiff's Second Amended Complaint (1) does not identify an official policy or custom that was the moving force of the alleged of his federal constitutional rights and thus fails to state a claim under *Monell*; (2) fails to state a plausible claim on which equitable relief can be granted for the alleged violations of either the United States Constitution or the Texas Constitution; and (3) requests monetary damages for the alleged violation of the Texas Constitution, for which there is no private right of action.

repeatedly failed to cure the deficiencies in his pleadings and allowing him to amend his pleading for a second time would be futile.

Because allowing Plaintiff a third bite of the apple by filing a Second Amended Complaint would only serve to unduly delay litigation, Plaintiff has repeatedly failed to cure his pleading deficiencies, and the proposed amendment to those pleadings would be futile, Plaintiff's Motion for Leave to File Second Amended Complaint, (Doc. 34), is **DENIED**.

### D.      Defendant's Motion to Strike Defendant's Second Amended Complaint is GRANTED.

Plaintiff has already availed himself of the right to amend his complaint once as a matter of course. Nonetheless, Plaintiff improperly filed his Second Amended Complaint on July 13, 2022. Plaintiff has already amended his pleadings once under Rule 15(a)(1); thus, he may not amend his complaint without the Court's leave or the Defendant's consent. FED. R. CIV. P. 15(a)(2). Because Plaintiff obtained neither, his Second Amended complaint must be stricken. Accordingly, Defendant's Motion to Strike Plaintiff's Second Amended Complaint, (Doc. 35), is **GRANTED.**

### E.      All claims are DISMISSED WITH PREJUDICE.

Because Plaintiff has already amended his pleadings once as a matter of course, and his Second Amended Complaint does not cure the deficiencies that have discussed above, the Court concludes that he has pled his best case. As such, because Plaintiff has failed to state any claim upon which relief can be granted, the Court concludes that all of his claims should be, and therefore are, **DISMISSED WITH PREJUDICE.** *See Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999) (holding that a district court may dismiss with prejudice without giving leave to amend if it determines that the plaintiff has plead his "best case").

### IV.  CONCLUSION

For the reasons discussed above, the Court hereby: (1) **DENIES** Plaintiff's Motion for Extension of Time to File Responsive Pleadings, (Doc. 33); (2) **GRANTS** Defendant's Second Motion to Dismiss, (Doc. 24); (3) **DENIES** Plaintiff's Motion for Leave to File Second Amended Complaint, (Doc. 34); and (4) **GRANTS** Defendant's Motion to Strike Plaintiff's Second Amended Complaint, (Doc. 35).

The Clerk of Court is hereby **ORDERED** to strike Plaintiff's Second Amended Complaint, (Doc. 32), from the record. All of Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**.

**SO ORDERED:** February 15, 2023.

Ada Brown
UNITED STATES DISTRICT JUDGE